# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:23-cv-00102-FDW

| | |
|---|---|
| DECARLOS BERNARD BARNES, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| ) | |
| JENNIFER GRANT, ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment. [Doc. 36].

## I.    PROCEDURAL BACKGROUND

On April 18, 2023, Pro Se Plaintiff DeCarlos Bernard Barnes ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 for the alleged violation of his civil rights while incarcerated at Craggy Correctional Center ("CCC") in Asheville, North Carolina. [Doc. 1]. In his unverified Amended Complaint in which he named Jeniffer Grant as the sole Defendant, Plaintiff alleged that, on March 19, 2022, at 8:30 p.m. while in the CCC bathroom, he was violently attacked by three other inmates, including being stabbed in his left eye, and left there bloodied. He further alleged that, when he was discovered by an unidentified officer during count, he was initially refused help for about 15 minutes. Plaintiff alleged that after this delay he was sent to a different building, where Defendant Grant nonchalantly questioned him about what happened and ignored his medical emergency. Plaintiff alleged that Defendant Grant ordered another unidentified staff member to handcuff Plaintiff so that he was unable to stop his eye from bleeding and put him in a

"very small cage" for approximately an hour before he was transported to a hospital. Finally, Plaintiff alleged that a doctor at the hospital told him that the delay in treatment caused him the complete loss of his left eye. [Doc. 13]. Plaintiff's Amended Complaint survived initial review on his Eighth Amendment claim against Defendant Grant for the alleged deliberate indifference to his serious medical needs. [Doc. 14].

On September 23, 2024, Defendant moved for summary judgment. [Doc. 36]. Defendant argues that summary judgment should be granted because she did not violate Plaintiff's Eighth Amendment rights and because she is entitled to qualified immunity in any event. [Doc. 37]. In support of her summary judgment motion, Defendant submitted a brief; her own Declaration;[1] the Declaration of John Smith, a CCC Corrections Officer; an Incident Report, including witness statements; and Plaintiff's medical records.[2] [Docs. 37, 37-1 to 37-4, 37-6].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 40]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

---

[1] Defendant Grant reports that her last name has changed to Burns since the time of the alleged incident and Plaintiff's filing the Complaint in this matter. [Doc. 37-4 at ¶ 1; Doc. 37 at 3 n.2]. As such, her Declaration is signed under her new name. [See Doc. 37-4 at 4].

[2] Defendant also provided that a CCC transportation policy would be provided after entry of a protective order. [Doc. 37-5 at 1]. Although a Protective Order has since been entered [Doc. 41], Defendant has not supplemented her summary judgment materials with this policy.

interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))].  The Court

further advised that:

> An affidavit is a written statement under oath; that is, a statement
> prepared in writing and sworn before a notary public.  An unsworn
> statement, made and signed under the penalty of perjury, may also
> be submitted.  Affidavits or statements must be presented by
> Plaintiff to this Court no later than fourteen (14) days from the date
> of this Order and must be filed in duplicate.

[Id. at 3 (citing Fed. R. Civ. P. 56(c)(4))].

Plaintiff responded to Defendant's motion with two purported "Affidavits," along with two

filings that reference various materials, much of which are not before the Court here, and recount

certain statements therein.  [Docs. 47, 47-1, 48, 48-1].  None of these materials are submitted under

penalty of perjury.  [See id.].  Moreover, neither Plaintiff's Complaint nor Amended Complaint

were verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered

for their evidentiary value here.  See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021)

(holding that a district court is to consider verified prisoner complaints as affidavits on summary

judgment "when the allegations contained therein are based on personal knowledge").  Thus, in

terms of evidentiary forecast, the Defendant's is unrefuted.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the pleadings, depositions, answers to interrogatories,

3

and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

III.    FACTUAL BACKGROUND

Defendant's uncontroverted forecast of evidence shows the following.

On the evening of Saturday, March 19, 2022, Defendant Grant, was a Lieutenant at CCC.

As a Lieutenant, she was responsible for the overall safety and security of the prison, monitoring officers and sergeants, and processing incident reports. [Doc. 37-4 at ¶ 4: Grant Dec.]. As a Lieutenant, Defendant Grant was also the Officer-in-Charge ("OIC") on some shifts and would serve as the acting Warden and line staff officer on weekends. [Id. at ¶¶ 5-6]. Her responsibilities in those roles included deciding whether to transport an inmate for medical care. [Id.]. That night, Correctional Officer John Smith was responsible for monitoring and maintaining security in dormitories A and B at CCC. [Doc. 37-2 at ¶¶ 3-4: Smith Dec.]. The dormitories at CCC have a sleeping area with beds and a separate bathroom area. In the bathrooms, there are shower curtains in the stalls. These shower curtains prevent officers and staff from observing inmates while they shower. [Id. at ¶ 5]. Every evening at 8:45 p.m. officers perform a formal count of inmates, which means a CCC correctional officer or staff member physically observes and counts every inmate within a specified area. [Id. at ¶ 6].

On March 19, 2022, at approximately 5:55 p.m., Plaintiff assaulted another offender at CCC in their shared dormitory. [Doc. 37-4 at ¶ 8]. The other offender did not fight back, and the assault was not reported to CCC staff. Sometime between 5:55 p.m. and 8:45 p.m., Plaintiff was involved in another altercation, which also was not reported to any CCC staff. [Id. at ¶ 8].

Officer Smith performed the count that night. After counting the number of inmates in the sleeping area, he moved on to count the inmates in the bathroom. [Doc. 37-2 at at ¶ 6]. When counting the inmates in the bathroom, Officer Smith discovered Plaintiff in one of the bathroom stalls with a towel covering one of his eyes. Officer Smith asked Plaintiff what happened, and Plaintiff responded that he had scratched his eye. Plaintiff refused to show his eye to Officer Smith. Officer Smith repeatedly asked Plaintiff if he needed medical attention for his eye, and

5

Plaintiff repeatedly refused.[3]  [Id. at ¶ 7].

Nonetheless believing that Plaintiff needed medical attention, Officer Smith contacted his supervisor, Sergeant Hunter Gosnell, about five minutes later immediately after he finished count. [Doc. 37-3 at ¶ 8].  After Officer Smith had reported Plaintiff's injury to Sergeant Gosnell, "Plaintiff came to the bars requesting medical attention."  [Id. at ¶ 9; see id. at ¶ 11].  Plaintiff was escorted to CCC's control office, which is in a building separate from the dormitory.  [Id. at ¶ 9]. There is no medical staff on site at CCC on weekends.  [Doc. 37-4 at ¶ 11].  If an offender needs medical attention on a weekend, the OIC contacts medical staff, typically a charge nurse, at a neighboring correctional institution to assess the offender's complaints and whether medical treatment is needed.  [Id.].  Because March 19, 2022 was a Saturday, there was no medical staff on site.  Defendant Grant, therefore, called a nurse at a different facility.  [Doc. 37-4 at ¶ 12].  The nurse assessed Plaintiff's complaints and decided that Plaintiff should be sent to a local emergency room ("ER").  [Id.].  The nurse, however, did not believe the injury was severe enough to warrant having an EMT called to CCC.  [Id. at ¶ 14].  During this time, Defendant Grant also asked Plaintiff what caused his injury.  Plaintiff refused to answer her questions.  [Id. at ¶ 13].

The officers and staff at CCC prepared to take Plaintiff to the local ER according to CCC policy.  [Id. at ¶ 15].  Because of a staff shortage at CCC that night, Defendant Grant had to locate two officers who could transport Plaintiff to the local hospital and determine how to cover their duties while they were away.  [Id.].  Plaintiff also had to be properly restrained before he could be transported.  [Id. at ¶ 16].  Despite these barriers, Plaintiff was transported to the local ER around

---

[3] In Plaintiff's responsive materials, he admits that he was "scared to answer [Officer Smith's] questions about who did this to [him]" and that he did not tell "the officers" what happened or ask for help that night because he was "scared to ask for help" and "terrified" and "scared of being labeled [a] rat" and being attacked again.  [Doc. 47-1; Doc. 48-1].  Plaintiff also tacitly admitted that he was not placed in a "very small cage" while awaiting transport, but rather a holding cell.  [Doc. 48 at 5].

10:30 p.m. that night, less than two hours after Officer Smith found Plaintiff in the bathroom. [Id. at ¶¶ 17-18]. At the hospital, Plaintiff reported to medical providers that he had scratched his left eye with his fingernail. [Doc. 37-6 at 5]. He underwent a CT scan at 11:23 p.m. for a suspected ruptured left globe. [Doc. 37-4 at ¶ 19; Doc. 37-6 at 5-6]. A few hours later, he underwent surgery to repair the ruptured globe.[4] [Doc. 37-6 at 6-7].

## IV. DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted).

Mere delay in the provision of medical care, however, is not enough to state a deliberate indifference claim. "Rather '[t]he objective prong requires [the plaintiff] to show that the alleged delay … put him at a substantial risk of serious harm." Moskos v. Hardee, 24 F.4th 289, 298 (4th Cir. 2022) (quoting Moss v. Harwood, 19 F.4th 614, 624 (4th Cir. 2021)) (internal quotation omitted). "A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent the unusual circumstances where the delay itself places the prisoner at 'substantial risk of serious harm,' such as where the

---

[4] Although not part of the forecast of evidence, Plaintiff alleged that his eye was not saved in the surgery and that he was later transported to UNC Hospital in Chapel Hill, North Carolina, to have his eye removed. [See Doc. 13 at 13-14].

prisoner's condition deteriorates markedly or the ailment is of an urgent nature." Id.; see also Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018) (explaining that where a claim is based not on a denial of medical care, but a claim that the care has been delayed, "we have ruled that there is no Eighth Amendment violation unless the delay results in some substantial harm to the patient, such as marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain") (internal quotation marks omitted).

Moreover, allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

Here, while Plaintiff's allegations painted a picture sufficient to state an Eighth Amendment claim, there is no forecast of evidence from which a reasonable juror could conclude that Defendant Grant was deliberately indifferent to Plaintiff's serious medical needs. That is, the forecast of evidence shows that Officer Smith acted quickly to consult with Sergeant Gosnell regarding Plaintiff's need for medical care, despite Plaintiff's refusal to tell Smith what happened or to initially accept medical care. The forecast of evidence also shows that, once Plaintiff was brought to the control room, Defendant Grant promptly called a medical provider at a neighboring facility to assess whether Plaintiff should be transported to an outside hospital. The forecast of evidence also shows that Defendant Grant prepared Plaintiff for transport and, despite a staffing shortage, located two officers who could transport the Plaintiff. The forecast of evidence also

shows that less than two hours elapsed between Officer Smith conducting count during which he discovered the and Plaintiff's transport to the hospital. Moreover, there is no forecast of evidence from which a reasonable juror could conclude that any delay in care "put him at a substantial risk of serious harm" or otherwise caused Plaintiff any injury. See Moskos, 24 F.4th at 298.

While the Court is certainly sympathetic to Plaintiff's injury and its impact on his life, there is no forecasted evidence from which a reasonable jury could conclude that Defendant Grant was deliberately indifferent to Plaintiff's serious medical need. Because there is no genuine issue for trial, the Court will dismiss Plaintiff's claim. Moreover, because the forecast of evidence does not support that a constitutional right was violated, Defendant would also be protected by qualified immunity. See E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

For these reasons, the Court will grant Defendant's motion for summary judgment.

### O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 36] is **GRANTED**, and this action is hereby **DISMISSED with prejudice**.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: November 4, 2024

Frank D. Whitney
United States District Judge